HOCKING VALLEY RY. CO. v. LACKAWANNA COAL & LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit. May 4, 1915.)

No. 1319.

1. CARRIERS ⊙═⇒30—SCHEDULE OF FREIGHT RATES—APPLICATION OF PROPOR-
TIONAL RATES.

A joint proportional rate, made by railroad companies from the Kan-
awha district in West Virginia to Toledo, "on cargo coal when for lake
shipments beyond," *held* not to apply to coal which, although originally
intended for lake shipment, was sold and delivered to vessels at Toledo
as bunker coal.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig.
⊙═⇒30.]

2. CARRIERS ⊙═⇒30—FREIGHT SCHEDULES—"PROPORTIONAL RATE."

A "proportional rate," as the term is used in a schedule of freight
rates, is the carrier's part of a through rate.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig.
⊙═⇒30.]

In Error to the District Court of the United States for the Southern
District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Action at law by the Hocking Valley Railway Company against the
Lackawanna Coal & Lumber Company. From the judgment, plaintiff
brings error. Reversed.

W. N. King and V. L. Black, both of Charleston, W. Va. (Brown,
Jackson & Knight, of Charleston, W. Va., on the brief), for plaintiff
in error.

Staige Davis, of Charleston, W. Va. (Connor Hall, of Charleston,
W. Va., and H. R. Van Deusen, of Scranton, Pa., on the brief), for
defendant in error.

Before KNAPP and WOODS, Circuit Judges, and WADDILL,
District Judge.

KNAPP, Circuit Judge. [1] From August 4 .to November 15,
1910, the Chesapeake & Ohio, Kanawha & Michigan, and Hocking Val-
ley Railroads had in effect a joint proportional tariff on bituminous
coal from Kanawha (group No. 2) district to Toledo, Ohio, of 97 cents
per ton of 2,000 pounds. The application of this tariff was fixed and
limited by a provision therein as follows:

"Note A. Proportional Rates on Cargo Coal when for Lake Shipments Be-
yond.—F. O. B. Cars on Dock—The charge for loading from cars to vessels is
5 cents per ton of 2,000 pounds, and will be in addition to the above rates."

While this tariff was in force the New River-Kanawha Fuel Com-
pany, whose liability for freight charges was afterwards assumed by
defendant, shipped from Pratt, a station within the district named,
5,613.3 tons of coal consigned to Toledo for lake shipments beyond.
By the written direction or consent of the fuel company these ship-
ments of coal were at Toledo delivered to and used for fuel by vessels
plying the Great Lakes, instead of being forwarded as cargo from that
port.

⊙═⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At the time these shipments moved there was no joint through rate on coal from Pratt to Toledo as a final destination. On such coal the through charge was the 50 cents local rate of the Chesapeake & Ohio from Pratt to Charleston, W. Va., plus the joint rate of the Kanawha & Michigan and Hocking Valley of $1.07 from Charleston to Toledo. The tariff naming the latter rate stated that it applied only on coal consigned to Toledo dock when used as fuel for vessels, and that there would be an additional charge of 11 cents per ton for transferring the coal from cars to vessels.

The plaintiff claimed that the lawful rate on the coal in question, which was in fact used by vessels for fuel and loaded into their bunkers for that purpose, was $1.68, made up of the items just stated. The defendant claimed that it was entitled to the rate of $1.02 per ton, made up of the 97 cents for transportation to Toledo, and 5 cents for unloading, named in the joint proportional tariff above mentioned. After suit was brought the freight money at the $1.02 rate was paid to and accepted by the plaintiff, but without waiving its right to prosecute the action for the excess claimed to be due, amounting to 66 cents per ton. The trial judge held, without stating his reasons therefor, that the 97-cent. rate applied for the haul to Toledo, but that the plaintiff was entitled to the unloading or transfer charge of 11 cents a ton, instead of the 5 cents which defendant had paid. The jury accordingly found a verdict for the difference of 6 cents a ton, besides interest, and the plaintiff thereupon brought the case to this court.

[2] We are clearly of opinion that the learned judge was in error in holding that the coal in question was entitled to the 97-cent rate. That rate, as stated in the caption of the tariff, was a "joint and proportional rate" which applied only to "lake shipments beyond," that is, to shipments carried as cargo from Toledo to more distant destinations. A "proportional rate," as the term implies, is simply a part of a through rate. It is the share of the aggregate charge from origin to destination which one or more of the carriers accepts for performing a definite portion of the whole transportation service. It is a matter of common knowledge that through rates are generally less than the sum of intermediate local rates; and when all the participating carriers do not join in establishing the through rates, it is a common practice for one or more of them to name proportional rates up to some point of connection with another carrier which completes or continues the transportation. The propriety and lawfulness of proportional rates to the point of transfer which are less than local rates to that point have frequently been affirmed by the Interstate Commerce Commission, and are sanctioned by considerations of public policy. Kansas City Transportation Bureau v. A., T. & S. F. Ry. Co., 16 Interst. Com. Comn. R. 195, 201; Southwestern Shippers' Traffic Association v. A., T. & S. F. Ry. Co., 24 Interst. Com. Comn. R. 570, 578; Boney & Parker Milling Co. v. A. C. L. R. Co., 28 Interst. Com. Comn. R. 383, 388.

In our judgment it is not open to question that shippers could get the benefit of the 97-cent rate only on coal which was carried as freight beyond Toledo, to whatever points the vessels might transport it. It was so limited in its application by the express terms of the published

tariff, and this limitation was none the less effectual because contained in what is called a "Note." By necessary implication this tariff excluded coal which at Toledo was dumped into vessels, not into their holds to be carried on as cargo, but into their bunkers to be used as fuel. It is plain that coal consigned to Toledo as a final destination was subject to an aggregate rate of $1.68, including the unloading charge of 11 cents, and it is equally plain, in fact and in law, that coal which there went into bunkers to be used for vessel fuel was coal of which Toledo was the final destination, because in that case its transportation as an article of traffic ended at Toledo. In other words, the coal in question was not entitled to the 97-cent rate because it was not transported beyond Toledo, and the shipper was therefore bound to pay the lawful rate then in force on coal consigned from Pratt to Toledo. That rate was $1.68, and the carrier had no option except to collect it. The difference in charges was fixed by the tariffs which respectively applied, and that difference is justified, not by difference of use, but by difference of destination.

The reasonableness of the $1.68 rate is a question for the Commission, and not for the courts. While that rate stands in the published tariffs of the carriers, it is the only legal rate, and binds shipper and carrier alike. The regulating statute on this point is explicit, and neither party can avoid its provisions. This has been repeatedly held by the Supreme Court in a long line of cases from Gulf, Colorado & Santa Fé v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910, to Louisville & Nashville R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. ——, decided April 5, 1915. The judgment must be reversed, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.