**James C. Davis, Director General, Plaintiff in Error, v. Naugle Pole & Tie Company, Defendant in Error.**

**Gen. No. 30,022.**

1. CARRIERS—*construction of tariff question of law.* Construction of a railroad tariff is a question of law for the court.

2. CARRIERS—*refund from actual tariff rate.* If carrier refunds freight from actual tariff rate, it may recover the refund since the rate cannot be altered by mistakes or misapprehensions.

3. CARRIERS—*proportional rates for unloading and reloading.* If storing, unloading and reloading of poles were subject to rebilling and reconsignment under a proportional rate, it was a privilege and service that required publication in a tariff in order to be lawful under Interstate Commerce Act, sec. 6.

4. CARRIERS—*proportional rate defined.* A proportional rate is defined to be a part of a through rate.

5. CARRIERS—*transit privileges suspending continuous movement.* While transit privileges may be made suspending temporarily a continuous movement, it must be one in which the inbound and outbound movements are in fact parts of a single transaction.

6. APPEAL AND ERROR—*disposition on reversal.* Where carrier sued for recovery of refund, and judgment was for shipper, on reversal the Appellate Court cannot enter judgment in plaintiff's favor for the amount of its claim, but must remand the cause.

Error by plaintiff to the Municipal Court of Chicago; the Hon. JAMES W. GORDON, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1925. Reversed and remanded. Opinion filed October 6, 1925.

GLENNON, CARY, WALKER & MURRAY, for plaintiff in error; L. BEERS-JONES, of counsel.

BAKER, HOLDER & SCHMIDT, for defendant in error.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This writ of error seeks the reversal of a judgment entered upon a directed verdict for the defendant in the case. The action was brought to recover refunds

of freight charges, erroneously granted, as plaintiff claimed, on defendant's application therefor. The verdict was directed upon stipulated facts, which presented merely a question of the construction of the railroad tariff, which is a question of law. (*The Great Northern Ry. Co. v. Merchants Elevator Co.*, 259 U. S. 285.) That question is whether under plaintiff's published tariff in effect at the time of several reshipments of cedar poles for defendants from Chicago to various points in the States of Ohio and New York, the local rates from Chicago to these points, as claimed by plaintiff, or the proportional rate, as claimed by defendant—the shipments having originated in areas defined by the proportional tariff—was applicable.

For the several shipments as aforesaid defendant paid the local rates, and later, on presentation to plaintiff of a claim for an overcharge in each case, the latter refunded the difference between the local and the proportional rates, as fixed by its filed tariff schedules, and claiming it was erroneously done seeks recovery of the same.

The cedar poles in question were grown in the Pacific coast territory and consigned from said territory to defendant at Chicago in carload lots for storage, and were unloaded and stored in defendant's yard, and there intermingled and reloaded into the cars in question and sent to the several points of destination as aforesaid.

At the times in question the United States Government was in possession and control of the railroads, and plaintiff Davis was the Director General of the same.

Annexed to the facts stipulated to as above' is, as part thereof, what is referred to as "tariff Eugene Morris 127 G," which sets forth the proportional rates in freight tariff applying at the time, as stated on its cover, "On lumber, Shingles and other Forest Products, carloads from Chicago   *   *   *   and points taking same rates   *   *   *   when originating in Pa-

cific Coast Territory defined on pages," etc., to points in Ohio and New York and other States. We are not impressed, however, with the contention of defendant in error that the words "when originating" have reference to where the product is grown, but think they refer to the billing or shipment from said territory.

It is the contention of plaintiff in error that inasmuch as the shipment was interrupted by the unloading and storage in defendant's yard, and was not a continuity of movement, proportional charges do not apply to such a voluntarily interrupted transportation, but that the local rates were applicable. If that contention is correct then plaintiff was entitled to recover the refunds, if made from the actual tariff rate, which could not be altered by alleged mistakes or misapprehension of either party. (*Bush v. Carloading & Distributing Co.*, 210 Ill. App. 399; *Texas & Pac. Ry. Co. v. Mugg*, 202 U. S. 242.)

Plaintiff in error predicates his argument upon various provisions of the Interstate Commerce Act, as amended, and in force (24 Stat. L. 379, as amended by 34 Stat. L. 584, 36 Stat. L. 454), and decisions interpreting the same, to the effect that the term "transportation" by section 1 of said Act, as amended, includes "all instrumentalities and facilities of shipment or carriage  *  *  *  and all services in connection with the receipt, delivery  *  *  *  storage· and handling of property transported"; and that section 6 requires the carrier to state separately in its schedules all terminal charges and "all privileges or facilities granted or allowed." It is also provided by section 15:

"If the owner of property transported under this Act directly or indirectly renders any service connected with such transportation, or furnishes any instrumentality used therein, the charge and allowance therefor shall be no more than is just and reasonable, and the commission may, after hearing on a com-

plaint, determine what is a reasonable charge as the maximum to be paid by the carrier or carriers for the service so rendered or for the use of the instrumentality so furnished.''

Quoting these provisions of the statute in *Interstate Commerce Commission v. Diffenbaugh*, 222 U. S. 42, the court held that services connected with milling, which consisted of elevating the grain from an inbound car into an elevator, and clipping, cleaning, weighing and discharging it into outbound cars, were services in transportation to be paid for ''notwithstanding the possibility that some advantage might be gained as a result.'' Interpreting these and other provisions the court in *Cleveland, C., C. & St. L. Ry. Co. v. Dettlebach*, 239 U. S. 588, said, respecting services rendered by the carrier as warehouseman, that the term ''transportation'' under the act included a variety of services that, according to the theory of the common law, were separable from the carrier's service as a carrier, and in order to prevent overcharges and discriminations from being made under the pretext of performing such additional services, Congress ''enacted that so far as interstate carriers by rail is concerned the entire body of such services should be included together under the single term 'transportation' and subjected to the provisions of the Act respecting reasonable rates and the like.''

Said section 6 also provides that the carrier's schedules shall state certain charges, and ''all privileges or facilities granted or allowed,'' and that no carrier shall ''extend to any shipper or person any privileges or facilities in the transportation except such as are specified in said tariffs.''

The bill or bills of lading in this case are not in evidence. Possibly they would not figure in the case. But the stipulation that the poles ''were consigned to the defendant at Chicago for storage  *  *  *  and stored in the yard of defendant and  *  *  *  reloaded into the cars in question'' (from the same

yard) "and sent to the places referred to," might indicate that the original bill of lading did not call for a through shipment, and that the inbound and outbound shipments were independent transactions. But, whether so or not, it seems clear from the construction given to the act in the cases cited, that if the storing, unloading and reloading of the poles at Chicago was subject to rebilling and reconsignment under the proportional rate from Chicago to the several places in New York and Ohio, it was a privilege and service that required publication in a tariff in order to be lawful, and we do not find and are not pointed to any specification of such a privilege in the schedule in evidence.

Such was the ruling upon an analogous state of facts in *Folmer & Co. v. Great Northern Ry. Co.,* 15 I. C. C. 33. There the shipment was of lumber from the State of Washington to Menasha, Minnesota, where it was delivered by the Chicago, Milwaukee & St. Paul Railway. There it was unloaded and subsequently forwarded by said railway to Detroit, Michigan, which charged the local rate from Menasha to Chicago. While the complaint was for an overcharge where there was a mistake in the routing it was held that the application of a proportional rate on the stop-over shipment would have been in violation of law, it not being specified in the carrier's tariffs and being a privilege and service that required publication in the tariff in order to be lawful. Like rulings were made in *Schultz-Hansen Co. v. Southern Pacific,* 18 I. C. C. 234 and *Moore Stave Co. v. Morgan's Louisiana, etc., Co.,* 41 I. C. C. 472.

It was said in *Chicago & A. R. Co. v. Kirby,* 225 U. S. 155:

"The broad purpose of the Commerce Act was to compel the establishment of reasonable rates and their uniform application."

And the court added what seems applicable here:

"That purpose would be defeated if sanction be

given to a special contract by which any such advantage is given to a particular shipper as that contracted for by the defendant in error.''

There being no specific tariff in the published schedule in question, to cover the privilege of unloading and reloading as aforesaid, it would be tantamount to granting defendant a special privilege and favorable discrimination to allow it to retain the advantage of such a privilege on payment of the proportional rate, which, as we understand the rulings of the Interstate Commerce Commission, applies only to a continuous through movement unless extended in the tariff or schedule establishing the proportional rate.

A proportional rate is defined to be a part of a through rate. (*Hocking Valley Ry. Co. v. Lackawanna Coal & Lumber Co.,* 224 Fed. 930; Barnes on Interstate Transportation, sec. 80 D, p. 173.) ''It is nothing more or less than a separately established rate, as that phrase is used in section 6 of the Amended Act, applicable to through transportation.'' (*Bascom Co. v. Atchison, T. & S. F. Ry. Co.,* 17 I. C. C. 354, 356; *Greater Des Moines, etc. v. Director General,* 60 I. C. C. 403, 407.) It also seems to be the rule that while transit privileges may be made suspending temporarily the continuous movement, yet it must be one in which the inbound and outbound movements are in fact parts of a single transaction (19 I. C. C. 409, 417), and the transit privilege or arrangements must be specified in the filed and published tariff or schedule, otherwise local rates are held to apply. (*Hocking Valley Ry. Co. v. Lackawanna Coal & Lumber Co., supra; Acme Cement Plaster Co. v. Chicago & Alton,* 17 I. C. C. 220; *Melrose Milling Co. v. Great Northern Ry. Co.,* 43 I. C. C. 741; *Swift & Co. v. Erie Railroad,* 45 I. C. C. 554; *LePrestre, Miller & Co. v. Erie Railroad,* 73 I. C. C. 621.)

Accordingly the judgment will be reversed. But the cause must be remanded because we cannot, as

asked by plaintiff in error, enter judgment in its favor for the amount of its claim. (*Mirich v. Forschner Contracting Co.*, 312 Ill. 343.)

*Reversed and remanded.*

GRIDLEY and FITCH, JJ., concur.