WILLIAM E. DIXON, *et al.,*
D/B/A BEECHURST AVENUE JOINT VENTURE

*v.*

AMERICAN INDUSTRIAL LEASING CO.

(No. 13292)

Submitted January 22, 1974.        Decided April 9, 1974.

736

*Michael Tomasky, Charles C. W. Atwater* for appellants.

*Spilman, Thomas, Battle & Klostermeyer, Howard R. Klostermeyer and Frederick L. Thomas, Jr., Robert T. Donley, Rothschild, Barry & Myers, Donald E. Egan* for appellee.

SPROUSE, JUSTICE:

This case is before the Court upon an appeal from the judgment of the Circuit Court of Monongalia County in a civil action instituted by William E. Dixon, Robert H. Law, Harry H. Meeks and John H. Junkins, partners, trading and doing business as the Beechurst Avenue Joint Venture, as the plaintiffs, against American Industrial Leasing Company, a West Virginia corporation, and the West Virginia University Board of Governors, as defendants.

The plaintiffs sought to recover damages for an alleged breach of contract between the plaintiffs and the defendant, American Industrial Leasing Company, and to recover damages from both defendants for allegedly conspiring to illegally terminate a lease between the plaintiffs and the defendant leasing company in order that the building leased by the plaintiff might be sold to West Virginia University free of the encumbrance of the lease. The Board of Governors was subsequently dismissed as a party upon agreement of counsel for the plaintiffs and defendant.

American Industrial Leasing filed an answer and counterclaim and subsequent amended pleadings. The counterclaim demanded damages from the plaintiffs for past due rent, and recovery of sums paid by American Industrial Leasing for taxes and mechanics liens.

The four plaintiffs and Alfred C. LeCocq had, on April 24, 1964, entered into an agreement designated as the Beechurst Avenue Joint Venture. The Beechurst Avenue Joint Venture was described in a deposition made a part of this record as a partnership formulated for the purpose

of financing, constructing, and maintaining a dormitory building at the campus of West Virginia University.

During the development of the project, the plaintiffs, Beechurst, and the defendant, American Industrial Leasing, concluded an involved purchase and lease-back agreement. The net effect of the executed agreement transferred the building to American Industrial Leasing which leased it back to the plaintiffs. The plaintiffs agreed to pay as rent an annual amount equal to ten percent of the landlord's investment. The lease agreement contained other details covering payment and default, payment of taxes, mechanics liens, insurance, and other provisions not pertinent to this appeal.

Alfred C. LeCocq transferred all or part of his interest in the "venture" to Ronald Sinclair prior to litigation. No consent was given by the other members for the transfer to Sinclair, although the original Beechurst Avenue Joint Venture agreement required consent of all the original members. The record also indicates that the other members were not aware of the transfer until after it was made.

On June 22, 1971 (some seven months after a prior separate trial on the defendant's counterclaim), the defendant moved, under Rule 12 (b) (7) of the West Virginia Rules of Civil Procedure (hereinafter referred to as R.C.P.), to dismiss the plaintiffs' action for failure to join an indispensable party as required by Rule 19 (a) R.C.P.

The court, on July 12, 1971, entered an order relating to two matters; it granted defendant's June 22, Rule 12 (b) (7) motion to dismiss the plaintiffs' action for failure to join Ronald Sinclair as an indispensable party, and overruled a motion made by plaintiffs on December 21, 1970 concerning the counterclaim. The court's action on the second motion will be considered later in this opinion.

As regards the order dismissing the action under Rules 12 (b) (7) and 19 (a), the plaintiffs, on July 21, 1971, moved

that the court reconsider its order of July 12. While this motion is not specifically designated, it is apparently pursuant to Rule 59 (e) R.C.P., "Motion to Alter or Amend a Judgment." The Rule 59 (e) motion was directed solely to the Rule 12 (b) (7) and Rule 19 (a) indispensable party issue, and the court disposed of it by order entered October 7, 1971. The plaintiffs filed their petition to appeal to this Court precisely within eight months from that October date, and it is conceded that the part of this appeal relating to the indispensable party issue was timely filed.

There are two principal issues: The first is whether Ronald Sinclair was an indispensable party; and the second, which will be treated later, is concerned with the timeliness of appeal of the trial court's rulings pertaining to the counterclaim.

Rule 12 (b) (7) R.C.P. is in part as follows:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter-claim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (7) failure to join an indispensable party. * * * "

Rule 19 (a) R.C.P. provides:

"Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff."

In LUGAR AND SILVERSTEIN, WEST VIRGINIA RULES, 170, the following statement appears:

"Although the terminology heretofore used in equity suits as to parties may have been some-what different, there is no real difference between the former equity practice as to parties needed

in a suit and the practice required by Rule 19. The former decisions will serve as precedents. However, under the Rules these principles will apply to both legal and equitable claims."

Federal Rule 19 was identical to our procedural rule until 1966, therefore, federal precedent established during that period is helpful in reaching a determination of the issues herein involved.

"Subdivision (a) of original Rule 19 was a generalized statement concerning necessary and indispensable parties to be read in the light of cases at law and in equity. It was not intended to change the rules governing compulsory joinder that had been laid down in those cases." 3A MOORE's FEDERAL PRACTICE, § 19.05[1], page 2202.

Under federal practice, the phrase "joint interest" was construed to mean those persons who were necessary or indispensable parties under the previous prior practice. Note, 68 W. VA. L. REV. 53, 54; 3A MOORE's FEDERAL PRACTICE, § 19.05[1], page 2203.

There is no precise or universal test to determine when a person's interest is such as to make him an "indispensable" party. 59 AM. JUR. 2d, *Parties*, Section 96, page 485; 1 HOGG, EQUITY PROCEDURE, § 40 (3d ed.); 3A MOORE's FEDERAL PRACTICE, § 19.07[1], page 2227.

In the case of an indispensable party, his presence is required in order that the court may make an adjudication equitable to all persons involved. 3A MOORE's FEDERAL PRACTICE, § 19.05[2]. The principle which underlies this doctrine of equity is that every judicial controversy, should, if possible, be ended in one litigation, and that the decree pronounced in a single suit should determine all rights, claims, interests, etc. 59 AM. JUR. 2d, *Parties*, Section 97, page 490.

In the leading case on indispensable parties, the United States Supreme Court stated: "Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which

requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties." Such parties were distinguished from "[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields v. Barrow,* 17 How. 130, 139.

In *State of Washington v. United States,* 87 F.2d 421, the Ninth Circuit attempted to formulate certain tests. The court stated: "There are many adjudicated cases in which expressions are made with respect to the tests used to determine whether an absent party is a necessary party or an indispensable party. From these authorities it appears that the absent party must be interested in the controversy. After first determining that such party is interested in the controversy, the court must make a determination of the following questions applied to the particular case: (1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party? (4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?" *State of Washington v. United States, supra* at 427-28. If any of the following determinations provoke a negative finding, the party is indispensable.

In *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, the court considered the amended version of Rule 19 in light of *Shields v. Barrow, supra.* Under the

1966 amendment to the Federal Rule 19, the necessary party label was eliminated to emphasize that the real purpose of the rule is to bring before the court all persons whose joinder would be feasible for a just adjudication, and the term indispensable is used in Federal Rule 19 (b) only in a conclusory sense. *Patterson* emphasized that each motion must be analyzed on a case-by-case basis to determine whether in equity and good conscience the party must be joined. The court stated that while the absent party might not be bound by the judgment, it is possible that a judgment may affect a non-party, and the court must consider the extent to which the judgment may "as a practical matter impair or impede his ability to protect his interest in the subject matter."

In discussing practice under Federal Rule 19, the following appears in 59 AM. JUR. 2d, *Parties*, Section 100, pages 498-99:

> "Some courts have regarded a person with a 'joint interest' as indispensable and have held that to have a joint interest under this rule the interest must be one which would be directly affected legally by the adjudication in the case, and that to constitute an indispensable party the person must have such an interest in the controversy that a final decree cannot be made without either affecting his interest or leaving the controversy in such a condition that a final determination may be wholly inconsistent with equity and good conscience. *Thus, it is said that the Rule in terms makes the determination of indispensable parties an exercise of a court's discretion;* and the long history of the similar doctrine in equity indicates that the controlling *limitation on this discretion is whether or not, under the particular facts of each case, absent parties will be adversely affected by nonjoinder.* \* \* \* " (Italics supplied.)

Chapter 47, Article 8A, Section 18 (g), Code, 1931, as amended, provides: "No person can become a member of a partnership without the consent of all the partners." In 60 AM. JUR. 2d, *Partnership*, Section 106, page 33, it is stated: "While the interest of a partner in the partnership

may be sold to a third person, a partner cannot by selling his interest in the partnership to a third person make the latter a partner in the firm against the will and consent of the other partners. * * * "

The Code also provides that: "In case of a dissolution of the partnership, the assignee is entitled to *receive his assignor's interest* * * * ." (Emphasis supplied.) Code, 1931, 47-8A-27, as amended.

"Such a conveyance or transfer does not pass the title of the firm, but only that of the individual partner" whose interest consists only in the "share in the surplus remaining after the payment of the partnership debts and the adjustment of the equities of partners, * * * ." 68 C.J.S., *Partnership,* Section 103, page 546.

In 1 ROWLEY, PARTNERSHIP, 574, it is stated: "The assignee takes no interest in the firm assets as such. He is only entitled to receive in accordance with his contract the profits which the assigning partner would otherwise be entitled to receive. * * * The assignee, during the continuance of the partnership is not entitled to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books."

It is also stated in the same treatise that, as to the effect of a change in membership, "[n]o separate rule applicable to joint adventures, as distinguished from partnerships, has thus far developed, * * * ." 2 ROWLEY, PARTNERSHIP, 542.

It is clear that Ronald Sinclair was no more than an assignee of Alfred C. LeCocq, one of the original partners. As an assignee, Sinclair had no interest in the firm assets as such, nor any right to participate in the management of or decisions of the joint venture. He has only a bare interest in his proportionate share of profits or surplus. The other four members having this same interest and more in the outcome of the litigation, were certainly

the proper parties to pursue it. In the terminology of *Shields,* Sinclair's interest is distinct and "separable from those of the parties before the court so that the court can proceed to a decree, and do complete and final justice, without affecting other persons, not before the court * * * ." Applying the *State of Washington v. United States* criteria, we reach the same conclusion: (1) The interest of the absent Sinclair is distinct and separable; (2) in his absence, the court can render justice between the parties before it; (3) the decree made in his absence could have no injurious effect on his interest; and (4) final determination in Sinclair's absence is certainly consistent with equity and good conscience.

This case has been pending for some time, and without reflecting on the merits of the case, the parties have a right to substantively reach the merits if they can do so without adversely affecting the interest of any party. This, of course, is the final test of the trial court's discretion—whether absent parties will be adversely affected by non-joinder.

In view of the above, and in view of the fact that Sinclair's interest could not be affected by non-joinder, the motion to dismiss for failure to join an indispensable party should have been overruled. The court abused its discretion in granting the motion.

Some months prior to its motion to dismiss the plaintiffs' action, the defendant, over plaintiffs' objection, had moved for and obtained a separate trial on its amended counterclaim under the provisions of Rule 42 (c) R.C.P. The trial court, by an order entered August 10, 1970, found "no just reason for delaying trial," and granted the defendant's motion.

At trial, in defending against the counterclaim, plaintiffs took the position that no rent was due under the terms of the lease for an initial period of four months. The plaintiffs also contended that it had not been necessary for the mechanics liens to be paid, and produced certain

evidence concerning payment of taxes. The trial court directed a verdict for the defendant on its counterclaim, and the jury, at the court's direction, returned a verdict for $80,956.45. The judgment order was entered on December 11, 1970. The plaintiffs made several post-trial motions related to the directed verdict, and appeals the court's rulings on those motions. The defendant moved before this Court to dismiss this part of the plaintiffs' appeal as being improvidently awarded—contending that more than eight months had passed between final judgment and appeal.

Resolution of this issue does not require us to consider the merits of the counterclaim—the questions involved are purely procedural. Chronology of the court's actions and plaintiffs' motions are the resolving factors.

*December 11, 1970*—the judgment against the plaintiffs on the counterclaim was entered.

*December 21, 1970*—the plaintiffs moved to set aside the verdict or to grant a new trial, or to grant alternative relief (Rule 50 (b) and Rule 59 (a) motions). The court did not rule on those motions at that time.

*June 22, 1971*—the defendant moved to dismiss plaintiffs' action for failure to join an indispensable party (a Rule 12 (b) (7) motion).

*July 12, 1971*—the trial court, in one order, ruled on both motions—plaintiffs' combined earlier Rule 50 (b) and Rule 59 (a) motions to set aside or open the directed verdict or judgment on the counterclaim, and on defendant's rule 12 (b) (7) motion to dismiss. The order thus was in two parts, and in both instances ruled against the plaintiffs. The first part of the order overruled plaintiffs' motion for a new trial, etc.; the second part of the order dismissed the action for failure to join an indispensable party.

*July 21, 1971*—the plaintiffs moved to set aside the order entered on July 12, 1971, "to the extent that the order in

paragraph (1) on page (1) thereof dismissed this action by sustaining the motions for dismissal of American Industrial Leasing Company, * * * ." In support of its motion, the plaintiffs assigned thirteen grounds, all of which related to the propriety of dismissal under Rule 12(b)(7) ("failure to join an indispensable party"). No reference was made in this motion to the second part of the court's July 12 order disposing of plaintiffs' Rule 50(b) and 59(a) motions concerning the December directed verdict on the counterclaim.

*October 7, 1971*—the court overruled the plaintiffs' July 21 motion.

*June 7, 1972*—a petition for appeal was filed in this Court exactly eight months from the entry of the October 7, order. After the docketing of the appeal, the defendant, American Industrial Leasing, moved to dismiss the appeal as improvidently awarded as to the counterclaim.

The contention of the leasing company in its motion to dismiss part of the appeal as improvidently awarded is two-fold: (1) The judgment of December 11, 1970, was a "final judgment" under Rule 54(b), the plaintiffs and the trial court having treated it as such, or alternatively the plaintiffs having waived any defect in the order; (2) if the former judgment is not final, that the judgment of July 12, 1971, adjudicated the issues finally and, the attack on the order being limited to the Rule 12(b)(7) relief, the order was final as to the judgment entered on the directed verdict; that the eight months appeal time ran from July 12, 1971, and expired prior to plaintiffs filing their appeal.

The plaintiffs contend, however, that the order of July 12, 1971, was not final for purposes of appeal because it did not dispose of the entire controversy. They argue that where all of the controversy is not decided, Rule 54(b) of the Rules of Civil Procedure require the trial court to state in its order that there was no just reason for delay and that the entry of judgment was upon the express direction of the court.

Rule 54 (b) provides:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

Where multiple claims are involved, and a court disposes of less than all of them, the absence of the express determination and direction prevents finality as to the adjudication of such claims. *Wilcher v. Riverton Coal Company,* 156 W.Va. 501, 194 S.E.2d 660. In *Wilcher,* the Court stated that it had long adhered to the principle that it will not decide cases piecemeal. See also *Staud v. Still,* 114 W.Va. 208, 171 S.E. 428.

Counsel for the defendant contends that the lack of express determination and direction was not raised or considered by the trial court, and cannot now be considered by this Court on appeal. Admittedly, this Court will not decide nonjurisdictional questions which have not been decided by the court from which the case has been appealed. *Shaw v. Shaw,* 155 W.Va. 712, 187 S.E.2d 124; *Korzun v. Shahan,* 151 W.Va. 243, 151 S.E.2d 287; *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897, but it is not necessary to consider the application of that rule to this case.

The July 12, 1972 order overruled the plaintiffs' alternative motions under Rules 50 (b) and 59 (a) to set aside the verdict, thus disposing of claims raised by the counterclaim. It also dismissed the action instituted by

the plaintiffs for failure to join an indispensable party. No claims were left unadjudicated. The order disposed of all the claims involved in this action. Rule 54(b) has no application when all claims have been determined as to all parties. *Joseph E. Bennett Co. v. Trio Industries, Inc.*, 306 F.2d 546; 10 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE, Section 2656, pages 44-45.

The judgment of July 12, 1972, was, therefore, "final" and "appealable" without the necessity of a Rule 54(b) determination and direction.

The eight months period for appeal is computed under the provision of Rule 72 R.C.P.: "The full time for filing a petition for appeal commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: Granting or denying a motion for judgment under Rule 50(b); or granting or denying a motion under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion were granted; or granting or denying a motion under Rule 59 to alter or amend the judgment; or granting or denying a motion for a new trial under Rule 59."

The trial court by its order of July 12, decided all matters in controversy. The plaintiffs, nine days later, submitted a Rule 59(e) motion asking the court to alter or amend its July 12 order. The plaintiffs limited their Rule 59(e) motion to the issue concerning the indispensable party. The filing of the 59(e) motion postponed the finality of the July 12 order as it related to that issue. The court's order disposing of that motion was entered on October 7, 1971, so the plaintiffs' appeal on that issue is timely.

The plaintiffs' Rule 50(b) and Rule 59(a) motions relating to the directed verdict, however, were determined by the court order entered on July 12, 1971. The court was not asked to reconsider this ruling. As the time for appeal was not postponed by the 59(e) motion, it ran from July 12, 1972.

Chapter 58, Article 5, Section 4, Code, 1931, as amended, provides in pertinent part: "No petition shall be presented for an appeal from, or writ of error or supersedeas to, any judgment, decree from, or writ of error or supersedeas to, any judgment, decree or order, whether the State be a party thereto or not, which shall have been rendered or made more than eight months before such petition is presented."

In *State v. Legg,* 151 W.Va. 401, 151 S.E.2d 215, this Court held that the eight month appeal period has been strictly applied. Under this strict application, an appellate court does not acquire jurisdiction unless the appeal petition is filed within the appropriate limitation period. An appeal or writ of error not presented within the prescribed appeal period, will be dismissed as having been improvidently awarded.

The plaintiffs filed their petition for appeal on June 7, 1972, more than eight months after their motions to set aside the verdict on the counterclaim were finally determined. Their appeal on the counterclaim is, therefore, dismissed as improvidently awarded.

The judgment of the Circuit Court of Monongalia County is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

> *Affirmed in part;*
> *reversed in part;*
> *remanded with directions.*