THE PIONEER COMPANY, *a corporation*

*v.*

THE HONORABLE JOHN G. HUTCHINSON, *Mayor*

*of the City of Charleston, West Virginia*

(No. 13561)

Decided December 19, 1975.

278

*Jackson, Kelly, Holt & O'Farrell, Forrest H. Roles and Roger A. Wolfe* for appellant.

*Steptoe & Johnson, Charles W. Yeager* for appellee.

FLOWERS, JUSTICE:

The Pioneer Company, a corporation, was the low bidder on a sewer construction contract advertised by the City of Charleston. When the city council voted to award the contract to Lester Construction Company, the second lowest bidder, Pioneer filed a civil action in the Circuit Court of Kanawha County against John G. Hutchinson, Mayor of the City of Charleston. Pioneer sought to compel the mayor to execute the construction

contract with it and to enjoin him from entering into such a contract with any other bidder. The trial court defined the issues as whether the plaintiff was a "responsible bidder" and was a taxpayer with standing to maintain the action. The court refused to consider the City of Charleston and Lester Construction Company as indispensable parties and found that the plaintiff was a "responsible bidder" with standing to bring the action. Having found Pioneer to be a "responsible bidder," the court held that the city was guilty of a palpable abuse of discretion in awarding the contract to other than the lowest bidder, Pioneer.

From an order granting Pioneer the mandatory and prohibitory injunctive relief prayed for, the mayor prosecutes this appeal. The mayor's assignments of error are predicated upon the foregoing rulings and additionally upon the action of the trial court in permitting I. V. Cunningham to intervene and in refusing to require an injunction bond.

After the appeal to this Court was granted, the appellant was further granted leave to move to reverse the judgment of the circuit court, pursuant to the provisions of *W. Va. Code*, 58-5-25, and Rule IX of the Rules of this Court.

The dispute here began in October, 1974, when the City of Charleston advertised for bids on a storm sewer construction project in the Garrison Avenue area of the city. On November 15, 1974, the bids were opened and the results certified by a firm of consulting engineers. The plaintiff corporation's bid was $1,392,200. The next lowest bidder was Lester Construction Company at $1,400,440. The two bids differed by $8,240 or approximately six-tenths of one percent.

After the bids had been opened and the results certified, it came to the attention of city officials that the ownership of Pioneer had been placed in issue by an action filed in the Circuit Court of Kanawha County on November 20, 1974, styled *I. V. Cunningham v. Dean*

*Lewis, et al.* The verified complaint in considerable detail alleged that Lewis had defrauded Cunningham of his interest in the stock of Mountain State Construction Company, Black, Inc., The Pioneer Company and Concrete Supply Company. These corporations were a part of a complicated corporate structure owned jointly by Lewis and Cunningham and operated principally by Lewis. Both Lewis and Pioneer were made parties defendant. The complaint prayed for injunctive relief and the appointment of a receiver. On November 20, 1974, the Circuit Court of Kanawha County issued a temporary injunction. The injunction effectively restrained Lewis from operating the companies whose ownership was in question, including The Pioneer Company. That injunction was dissolved on December 6, 1974, for failure of the plaintiff Cunningham to post the requisite $1,000,000 bond.

In addition to the litigation concerning the ownership of The Pioneer Company, the city had information concerning the possible default on a dam construction project in Virginia by Mountain State Construction Company, a company of which Mr. Lewis was also the president and which used equipment owned by The Pioneer Company.

As a consequence of the city's uncertainty about Pioneer, a 30-day extension of the bid period was requested. Within 10 days both Pioneer and Lester notified the city of their approval of the extension. This extended the award deadline to February 14, 1975.

From November 20, 1974, until February 3, 1975, the city attempted to obtain information which would clarify the status of The Pioneer Company. Tom Blair, a consulting engineer on the project, talked with Lewis concerning the problems raised by the law suit. Blair recommended that city officials award the contract to the low bidder "because he really wasn't in a position to do anything else."

The information gleaned by city officials was presented to the finance committee of the city council on Febru-

ary 3, 1975. The committee after about thirty minutes discussion voted unanimously to recommend the bid of Lester Construction Company. Upon the recommendation of the finance committee, the city council, with both bids before it, and after some questioning of the finance chairman about the recommendation, voted unanimously to award the contract to Lester and authorized the mayor to execute the contract.

On February 5, 1975, The Pioneer Company filed a civil action in the Circuit Court of Kanawha County, alleging it was the lowest responsible bidder and that the city council had acted in violation of the governing ordinance, Code of Charleston, West Virginia, Article 35, Sections 1 and 9.[1] An amended complaint was subsequently filed by Pioneer in its capacity as a taxpayer and in behalf of other taxpayers similarly situated.

The mayor sought dismissal of the complaint on the grounds that the complaint failed to state a cause of action, failed to join the City of Charleston and Lester Construction Company as indispensable parties, and was prosecuted by a plaintiff who had no standing to sue. The motion to dismiss was overruled by the trial court.

A hearing on the application for the injunction was subsequently held. The evidence presented by the plaintiff established that the company was qualified by experience, personnel, equipment, and financial stability to perform the duties under the contract. The evidence further established that the corporation was qualified and able to furnish a performance bond to secure performance of its contractual duties. The plaintiff presented evidence that it had completed all of its contracts on schedule or ahead of schedule.

It was uncontested by the mayor that Pioneer was a taxpayer in the City of Charleston and that, except for the doubts about Pioneer's responsibility created by the

---

[1]See p. 12 infra.

I. V. Cunningham litigation, Pioneer was otherwise a qualified bidder.

In defense of the position that Pioneer was not a "responsible" bidder, the mayor presented the testimony of Hugh Bosely, city manager, and Joe S. Smith, chairman of the finance committee of the city council of Charleston. According to Bosely's testimony, the mayor had received some phone calls, indicating that the city should carefully examine the status of Pioneer Company before awarding the contract. These rumors were practically all linked to the institution of the litigation against Lewis and were a matter of public record. The evidence established that there was no direct communication by the city with Pioneer which indicated that its bid was not the only bid being considered.

Bosely testified that he exercised care and tried to obtain as much information as he could about Pioneer to relate to the finance committee and to the city council. According to Bosely's testimony, the city was troubled by the uncertain ownership and control of Pioneer and by the possibility that a change of management could result in a delay of the project and unresponsiveness to public complaints about access to residences, disruption of utilities, dirt and noise.

Bosely stated that the city would feel "uncomfortable in dealing with a person who had nothing to do with preparing the bid and may be opposed to the policy of the company that we start out with." He testified that, in view of severe traffic problems in the Garrison Avenue project, the council did not want to take a chance of having any disruption which might keep the project from progressing.

The city's concern, regarding the uncertainty of the management and ownership of Pioneer and the possibility of resultant delay from the situation, was substantiated by Joe S. Smith, chairman of the finance committee of the city council.

At the commencement of the hearing on February 13, 1974, I. V. Cunningham, Sr., the plaintiff in the civil action against Pioneer and others, was granted permission to intervene as a party plaintiff in the action against the mayor. Immediately thereafter, the circuit court announced its decision and entered an order enjoining the defendant mayor from entering into a contract for the construction of the Garrison Avenue storm sewers with any other bidder and ordering the mayor to execute the contract with the plaintiff, Pioneer Company.

## I

The mayor moved to dismiss count one of the amended complaint on the ground that Pioneer had no standing to prosecute an action for injunctive relief. The first count set forth a cause of action in Pioneer's capacity as the lowest bidder. The second count, however, was prosecuted by Pioneer as a taxpayer and in behalf of other taxpayers similarly situated.

Sections 1 and 9 of Article 35 of the Code of Charleston[2] empower the council to reject any and all bids, but require that the contract shall be let to the lowest responsible bidder. Statutes and ordinances of this type are enacted for the benefit of the public, to protect public coffers, and confer no rights upon individual contractors. *Colorado Paving Co. v. Murphy*, 78 F. 28 (8th Cir.), *aff'd* 166 U.S. 719 (1897); *Joseph Rugo, Inv. v. Henson*, 190 F. Supp. 281 (D.C. Conn. 1960); *Malan Construction Corp. v. Board of County Road Commissioners*, 187 F. Supp. 937 (E.D. Mich. 1960). *See, Butler v. Printing Commissioners*, 68 W. Va. 493, 70 S.E. 119 (1911). An action to enjoin the awarding of a contract, however, may be prosecuted at the instance of a taxpayer. *Budd v. Board of Commissioners*, 216 Ind. 35, 22 N.E.2d 973 (1939); 10 E. MCQUILLIN, *Municipal Corporations*, §29.85, p. 451 (3rd ed. 1966).

---

[2]*See* p. 12 *infra.*

Since the plaintiff had standing as a taxpayer to prosecute the second count of the complaint, the error of the circuit court in refusing to dismiss the first count of the complaint is harmless. Rule 61 of the West Virginia Rules of Civil Procedure and *W. Va. Code* 58-1-2, as amended, provide that a court must regard as harmless any error, defect or irregularity in the proceeding in the trial court which does not affect the substantial rights of the parties. *Boggs v. Settle,* 150 W. Va. 330, 145 S.E.2d 446 (1965).

## II

It is the position of the mayor that both the City of Charleston and Lester were indispensable parties, and that this action should have been dismissed because of the failure of Pioneer to join them as parties defendant. Rule 19(a) of the West Virginia Rules of Civil Procedure states that persons having "a joint interest" shall be made parties. Whether a party is indispensable under the provisions of Rule 19(a) of the West Virginia Rules of Civil Procedure is a determination to be made in the sound discretion of the trial court. *Dixon v. American Industrial Leasing Co.,* 157 W. Va. 735, 205 S.E.2d 4 (1974).

The *Dixon* case established criteria by which a trial court is to be guided in making such a determination. In the first point of the syllabus of *Dixon* the Court stated:

" . . . Generally, a court must consider whether: (1) the interest of the absent party is distinct and severable; (2) in the absence of such party, the court can render justice between the parties before it; (3) the decree made will, in the absence of such party, have no injurious effect on the interest of such absent party; (4) the final determination will, in the absence of such party, be consistent with equity and good conscience, but each case must be considered on the basis of its peculiar facts, and the principal limitation on the court's discretion is whether, under the particular facts of each case, absent parties will be adversely affected by non-joinder."

To determine whether the trial court abused its discretion in finding that the City of Charleston and Lester were not indispensable parties, it is necessary to examine in more detail the nature of the action, the issues to be determined, and the respective interests of Lester and the city.

The broad issue in this case is whether the mayor should be restrained from executing a particular contract with Lester Construction Company and compelled to execute that contract with Pioneer. Resolution of the issue is contingent upon the legality of the action of the city council, the governmental body having the requisite authority to award the contract.

Section 1 of Article 35 of the Code of Charleston[3] reseves to the council "the right to reject *any* and *all* bids." Section 9 permits the council or manager to reject *"all* bids." Both sections of the code mandate that the contract shall be awarded to the "lowest responsible bidder." The mayor has no discretion whether to award a contract. His action in executing a contract is purely ministerial. The city, acting through its council, awarded the contract here to other than the lowest bidder. Its exercise of discretion in this regard is the basis of this litigation.

We do not believe that the interest of the city was distinct and severable from that of the mayor or that justice could be rendered between the parties before the court, without having an injurious effect on the interests of the city. The City of Charleston was an indispensable party to the action, and the trial court abused its discretion in finding to the contrary. In refusing to grant the motion to dismiss on this ground, therefore, the trial court committed reversible error.

The same reason, however, is not applicable to Lester Construction Company. While the contract had been awarded by the city council to Lester, no contractual

---

[3]*See* p. 12 *infra.*

rights had vested. Moreover, as we noted previously, no rights are vested in a bidder by virtue of the provisions of Sections 1 and 9 of Article 35 of the Code of Charleston.[4] Lester would have had no standing to maintain an action in its capacity as a bidder. While it may be said that Lester's interest in the litigation is substantial, it is not an interest sufficient to make Lester an indispensable party.

## III

The third assignment of error raises the legality of the action of the city council in awarding the contract to Lester. The council's authority is derived from the following provisions of Article 35 of the Code of Charleston:

> Section 1: "The council shall reserve the right to reject any and all bids, but the contract, if let, must be let to the lowest responsible bidder. The council shall take from the person to whom the work is let a written contract."
> Section 9: "As soon as the announcement of the several bids shall have been completed and the necessary calculations made, the contract shall be awarded to the lowest responsible bidder; provided, that the council or manager shall have the power to reject all bids."

Statutes and ordinances which require public officers or a public tribunal to award a contract to the "lowest responsible bidder" vest wide discretion in officials. 64 *Am. Jur. 2d Public Works and Contracts* §68, p. 925; 10 E. McQuillin, *Municipal Corporations*, §29.72, pp. 414-19 (3rd ed. 1966). Such discretion has been recognized by this Court in the interpretation of statutes and ordinances containing a "lowest responsible bidder" provision. *State ex rel. Printing-Litho, Inc. v. Wilson*, 147 W. Va. 415, 128 S.E.2d 449 (1962); *Wysong v. Walden*, 120 W. Va. 122, 196 S.E. 573 (1938); *Butler v. Printing Commissioners, supra.*

---

[4]*See* text below.

A court will not ordinarily interfere with the action of a public officer or tribunal clothed with discretion, in the absence of a clear showing of fraud, collusion or palpable abuse of discretion. *State ex rel. Printing-Litho, Inc. v. Wilson, supra.* Discretion in awarding a municipal contract is not abused when it is predicated upon "good faith and honesty." *Harrison v. City of Huntington,* 141 W. Va. 774, 93 S.E.2d 221 (1956).

In the instant case, no accusation of fraud, collusion, lack of good faith or dishonesty is made. The trial court attempted in the short time before the bid period expired to determine whether Pioneer was a "responsible bidder." This was the function of the council, not the court. It was not within the authority of the court to substitute its judgment for that of the council. 10 E. MCQUILLIN, *Municipal Corporations,* §29.83, pp. 447-48 (3rd ed. 1966). *Budd v. Board of Commissioners, supra.* Judge Brannon sternly counseled us more than half a century ago that courts were accused of being "usurpatory of power, and inclined to dominate over other branches of government. The courts should not justify this charge." *Butler v. Printing Commissioners, supra* at 494; 70 S.E. at 120.

The trial court found the council "guilty of a palpable abuse of discretion" essentially because the court reached a different conclusion than did the council. The court's test thus went to the result rather than the process. While the result may be evidence of a faulty process, a finding of abuse of the discretion vested by law in the council must be predicated upon more than a difference in judgment.

The record established that Pioneer had the requisite skill, personnel, equipment, and financial ability to perform the duties arising under the contract. Pioneer was qualified and able to furnish a performance bond. But the term "responsible" is not limited to financial and moral responsibility. The officer or tribunal, having the authority to award the contract, must be satisfied that it can and will be completed in a competent and efficient

manner. *State ex rel. Printing-Litho, Inc. v. Wilson, supra.* "What the public desires is a well-constructed work, for which a lawsuit even against a responsible defendant is a poor substitute; . . . ." 64 Am. Jur. 2d *Public Works and Contracts* §70, p. 927.

In the instant case, the judgment of the council was based upon a concern that the Cunningham litigation raised serious questions about the ownership of Pioneer. This uncertainty of ownership, the city contends, might result in administrative problems and performance delays, which were not in the best interests of the public. Admittedly, the injunction, which effectively restrained Lewis from operating Pioneer, was dissolved on December 6, 1974, for failure of plaintiff Cunningham to post the requisite bond. A more diligent investigation by the city would have revealed this information. There were, however, other factors justifying the city's concern and its decision. A final determination of the lawsuit might result in a change of ownership of the company. In the interim, there remained the possibility that a receiver would be appointed. A receiver has the power to repudiate an executory contract if, in his opinion, it is unprofitable or its performance is undesirable. *Waddell v. Shelton Gasoline Co.,* 101 W. Va. 468, 133 S.E. 75 (1926); *Griffith v. Blackwater Boom & Lumber Co.,* 46 W. Va. 56, 33 S.E. 125 (1899).

The city by delaying award of the contract beyond the original deadline attempted to gain facts upon which it could act responsibly and in the public interest. While a better record might have been made by the council to illustrate more clearly the basis of its award to the second lowest bidder, the record made upon review in the trial court is more than adequate to sustain the action taken.

IV

The fourth assignment of error is based upon the refusal of the trial court to require the plaintiff to post bond on the awarding of the injunction.

The court explained its refusal as:

> "Actually, there is a mandamus granted in this case and as I review the authorities you are talking about a pure injunction."

* * *

> "* * * In any event, it appears to me that the City of Charleston would have adequate protection in this case by virtue of the fact that the contract in question itself requires and the City ordinances require that a performance bond and bond of other indemnification be made, that the protection is adequate in this case, so the motion you make is denied, sir."

The action was not brought as a mandamus proceeding; neither was it heard nor decided as one. The amended complaint asked the court to "enjoin, restrain and prohibit the defendant * * * from entering into a contract with any bidder other than the plaintiff herein * * *." The court's final order recites that the plaintiff was "asking for an injunction." There was no mention of mandamus until the court had granted the injunction and counsel for the defendant pressed the matter of a bond. The question cannot be disposed of by belatedly changing the name of the action.

*W. Va. Code*, 53-5-9, provides:

> "An injunction (except in the case of any personal representative, or other person from whom, in the opinion of the court or judge awarding the same, it may be improper to require bond) shall not take effect until bond be given in such penalty as the court or judge awarding it may direct, with condition to pay the judgment or decree (proceedings on which are enjoined) and all such costs as may be awarded against the party obtaining the injunction, and also such damages as shall be incurred or sustained by the person enjoined, in case the injunction be dissolved * * *."

The statute plainly commands that bond be furnished "except in the case of any personal representative, or

other person from whom, in the opinion of the court or judge awarding the same, it may be improper to require bond." To determine whether the plaintiff contractor is such "other person from whom * * * it may be improper to require bond," we must employ a rule long adhered to be this Court—the rule of *ejusdem generis.*

> "In the construction of statutes, where general words follow the enumeration of particular classes of persons or things, the general words, under the rule of construction known as *ejusdem generis,* will be construed as applicable only to persons or things of the same general nature or class as those enumerated, unless an intention to the contrary is clearly shown." Point 2, Syllabus, *Parkins v. Londeree,* 146 W. Va. 1051, 124 S.E.2d 471 (1962); Point 2, Syllabus, *Vector Company v. Board of Zoning Appeals,* 155 W. Va. 362, 184 S.E.2d 301 (1971).

Thus the exempting language of the statute is deemed to mean such "other person" as may be in a similar fiduciary capacity as a "personal representative." The plaintiff bidder is not "of the same general nature or class" as a "personal representative," and hence is not exempt from the requirement of furnishing a bond.

The fact that the plaintiff will furnish a bid bond or performance bond under its construction contract does not exempt it from furnishing an injunction bond. The security which the respective bonds furnish arises from entirely distinct causes and provides totally different indemnity. *Board of Education v. Allender,* 206 Md. 466, 112 A.2d 455 (1955).

The purpose of an injunction bond is to require the party initiating the injunctive process to protect persons whose rights are prejudicially affected from loss occasioned by damages or injury. In the absence of an injunction bond, recovery for an improperly issued injunction consists only of court costs, unless an action for malicious prosecution can be sustained. *Meyers v. Washington Heights Land Co.,* 107 W. Va. 632, 149 S.E. 819

(1929); *Glen Jean, Lower Loup & D. R. Co. v. Kanawha, Glen Jean & E. R. Co.*, 147 W. Va. 725, 35 S.E. 978 (1900).

Thus it was error for the court to fail to require the plaintiff to furnish an injunction bond as required by the statute notwithstanding the final nature of its order. Even on the award of an injunction that is final in nature, bond should be required until the time for appeal has expired or the appellate process is concluded.

## V

Finally, the mayor contends that he was prejudiced by the action of the trial court in permitting I. V. Cunningham to intervene as a party plaintiff after the case was substantially concluded. The motion for intervention was granted at the commencement of the hearing on February 13, 1975, immediately prior to announcement by the court of its decision in the case. Cunningham presented no evidence and filed no brief. The sole basis of the intervention was to show that Cunningham, the adversary of Pioneer in the separate lawsuit, had studied the Pioneer bid and approved of it.

Rule 24 of the West Virginia Rules of Civil Procedure authorizes the intervention of parties as a matter of right and by permission of the court. That rule requires a timely application in both instances. Timeliness, however, is a matter of discretion with the trial court and abuse of discretion must be shown to reverse. 3B J. MOORE, FEDERAL PRACTICE, ¶24.13[1], p. 24-521.

In the circumstances of this case it cannot be said that the adjudication of rights was delayed or that the defendant was prejudiced by the intervention of I. V. Cunningham. 3B J. MOORE, FEDERAL PRACTICE, ¶24.13[1], p. 24-521.

For reasons stated in this opinion the judgment of the Circuit Court of Kanawha County is reversed.

*Reversed.*