Reward Oil Company et al., Appellant, v. Charles H. White, Appellee.

Term No. 47,019.

242

Opinion filed January 26, 1948.
Released for publication February 26, 1948.

PROVINE, PINKERTON & MILEY, of Taylorville, for appellant.

CHARLES R. MYERS, of Vandalia, for appellee.

MR. PRESIDING JUSTICE BARTLEY delivered the opinion of the court.

The circuit court of Clay county on May 22, 1947, entered a decree authorizing Reward Oil Company to enter upon, drill for and remove oil and gas from a sixty-four acre tract of land in Larkinsburg township, Clay county, Illinois, in a proceeding brought under the provisions of the Act of 1939 entitled, "An Act in relation to Oil and Gas Interests in Lands" (ch. 104, pars. 25–33, Ill. State Bar Stats. 1945). Appellant, Reward Oil Company and H. J. Schlafly hold leases from the owners, of 11/12ths of the oil and gas underlying the real estate mentioned. Appellee, Charles H. White, owner of the 1/12th interest in the oil and gas underlying the land in question, refused to lease the interest for development or to authorize appellant to develop it. There followed the proceedings under the Act mentioned.

The decree provided, among other things, that the appellant, Reward Oil Company was authorized to enter upon, drill for and remove and market oil and gas from the property for the benefit of the parties, in accordance with the provisions of the Statute of State of Illinois, entitled "An Act in relation to Oil and Gas

Interests in Lands,'' approved July 1, 1939, and that the Reward Oil Company should reimburse itself out of any proceeds inuring to the interest of appel.ee, Charles H. White, for his proportionate part of the costs of drilling for, producing and disposing of oil and gas and should account to the court for such proceeds in accordance with the decree. This was in entire accordance with the statute.

The pertinent provisions of the Act in relation to oil and gas interests are in the following paragraphs:

Paragraph 26—''The owners of such majority in interest desiring to drill for and remove oil and gas may file a complaint in chancery in the Circuit Court of the county in which such lands or some part thereof, are located, asking the court for permission to drill for and remove oil and gas therefrom for the use and benefit of all the owners thereof, and setting forth the relevant facts and the interests therein of all persons so far as the same are known to the plaintiffs.''

Paragraph 31—''If the court shall find that the material averments of the complaint are true, and that the plaintiffs do in fact own a majority in interest of such lands as joint tenants, tenants in common or coparceners, that the oil or gas is being drained or is in imminent danger of being drained from such lands by means of wells on other lands, and that said plaintiffs are entitled to or have been granted by any life tenant, the present right of possession or right to use the surface of such lands, the court shall enter a decree authorizing the plaintiffs to drill for and remove oil and gas from such lands so as to realize the full value thereof for the benefit of the parties entitled thereto. The court shall also provide by decree for the disposition by the plaintiffs of the proportionate part of oil and gas of the defendants to the suit, and provide for the payment and distribution of the net proceeds thereof to the defendants, as their respective interests may appear, after deduction of the proportionate costs

of such proceedings and of drilling for and producing, and disposing of, such oil and gas; and the court may, from time to time, require the plaintiffs to give bond or other security to be approved by the court, to secure such payment to the defendants."

Subsequent to the entry of the decree, the Reward Oil Company filed its petition in the proceedings asking the court to approve a contract between Reward Oil Company and Paul Doran, dated May 13, 1947, for the purpose of drilling and exploring for oil under the terms of which, it was agreed that the contractor should be paid upon completion of the well, three dollars ($3) per foot for each foot drilled and the necessary rig time at twelve dollars and fifty cents ($12.50) per hour for time spent in circulation for samples, etc. The contract price was made payable 11/12ths in cash upon completion of the well and a 1/12th charge against the interest of appellee, Charles H. White, out of the proceeds of oil and gas produced and marketed for his account, with the provision that if and as such proceeds came into the hands of the operator, it would pay to the contractor out of such proceeds, an amount equal to twice the amount of the cash contract price. After a hearing, the court on May 22, 1947, entered an order denying the prayer of the petition.

There is, therefore, for consideration here the correctness of this order and there is involved the construction of that portion of paragraph 31 of the statute which provides that, "The court shall also provide by decree for the disposition by the plaintiffs of the proportionate part of oil and gas of the defendants to the suit and provide for the payment and distribution of the net proceeds thereof to the defendants, as their respective interests may appear, after deduction of the proportionate costs of such proceedings and of drilling for and producing and disposing of, such oil and gas."

 Appellant contends that under the statute, the court is authorized to approve a contract such as the one in question, providing for the payment of a larger amount from oil recovered, if recovered, for appellee's share of drilling expenses than is to be paid by appellant. Appellee, on the other hand, contends that when the decree was entered in accordance with the statute insofar as related to the drilling for oil, the jurisdiction of the court ended when it entered its decree giving authority to drill and providing for the accounting of the proceeds due appellee after reimbursing itself out of any proceeds inuring to the interest of appellee, Charles H. White, for his proportionate part of the costs of drilling for, producing and disposing of oil and gas, and it contends that this question was settled in the case of *Pure Oil Co. v. Byrnes,* 388 Ill. 26. In that case the trial court entered a decree granting appellant permission to drill and produce oil and ordering it to account for and pay into court for the use of the appellee and his wife, all sums of money received from the sale of one-fourth of the oil produced, if any, in excess of one-fourth of the cost of the law suit and of drilling, completing, maintaining and operating said well or wells, and of marketing the production. The appellee was owner of a one-fourth interest in the land in question in that suit. The Supreme Court, among other things, stated that prior to the Act of 1939, any cotenant assuming to exercise exclusive ownership became liable to account for damage to the inheritance and was not allowed to deduct expenses incurred in taking profits from the land, and commencing on page 39 said: "The stern rule of liability of a cotenant, who commits waste or damage to the common property, has been relaxed where the profit taken from the land is of a fugacious nature and liable to be exhausted by adjacent operators. In such cases, the rule allowing deductions for money spent in protecting,

preserving and marketing applies, and where the subject matter is oil, the cotenant who takes it from the land must account to his cotenants for their respective proportions of the net value of the oil produced, which is its market value, less the cost of extracting and marketing it. (*New Domain Oil & Gas Co. v. McKinney,* 188 Ky. 183, 221 S. W. 245; *Prairie Oil & Gas Co. v. Allen,* (Okla. C. C. A.), 2 Fed. 2d 566; *Burnham v. Hardy Oil Co.* (Tex. Civ. App.), 147 S. W. 330, affirmed 108 Tex. 555, 195 S. W. 1139.) That was exactly the accounting rule provided by the statute of 1939, aforesaid, whereby court permission was granted to the holder of a majority of joint interests to drill, produce and market oil from the common property to protect if from being drained by adjacent wells.''

We are of the opinion that appellee is correct in his contention that the question was settled by *Pure Oil Co. v. Byrnes,* 388 Ill. 26.

■ By reason of the statute in question, the court has power to authorize the owners of a majority in interest desiring to drill for and remove oil and gas, to do so if the oil or gas is being drained or in imminent danger of being drained from such land by means of wells on other lands, so as to realize the full value thereof for the benefit of the parties entitled thereto, and the statute makes it mandatory on the court, to provide by the decree, for the disposition by the plaintiffs, of the proportionate part of the oil or gas of the defendants to the suit, and to provide for the payment and distribution of the net proceeds to the defendants, as their respective interests may appear, after the deduction of the proportionate costs of such proceedings and of drilling for and producing and disposing of such oil and gas. By these provisions, the owners of a majority in interest have the right to drill for and remove the oil and gas at their own costs and are entitled to a deduction from the proportionate part of the oil and gas belonging to the defend-

ants, the proportionate costs thereof, according to the respective interests of the defendants. The word "proportionate" is in itself a broad and loose word, but it is ordinarily understood to mean—in proportion to number or interests—and under the statute involved, the defendants to a suit under the Act, are entitled to their proportionate share of oil and gas in accordance with their interests, after deduction therefrom, of the proportionate costs incurred in the drilling for, producing and disposing of the oil and gas, in the ratio of their interests. If the plaintiff in such a case desires to explore for oil under the circumstances mentioned, he may do so, but he must do so at his own cost, subject to the right of reimbursement from the defendants for a proportionate part of the costs as related to the undivided ownership of the defendants.

The decree of the circuit court of Clay county, in our judgment, is correct and is affirmed.

*Decree affirmed.*

CULBERTSON and SMITH, JJ., concur.