NOTICE
Decision filed 09/13/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220206

NO. 5-22-0206

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| PATRICK J. O'MALLEY JR., as Trustee Under Trust Agreement Dated January 1, 2006, | ) ) ) | Appeal from the Circuit Court of Crawford County. |
| Plaintiff and Counterdefendant, | ) | |
| v. | ) ) | No. 16-CH-9 |
| MARCIA P. ADAMS, as Successor Trustee of the Almyra M. Prather Revocable Trust Agreement dated December 15, 1967, and Individually, and LAWRENCE P. LUBY, Executor of the Estate of Betty P. Luby, Deceased, | ) ) ) ) ) ) | |
| Defendants, Counterplaintiffs, and Third-Party Plaintiffs-Appellees | ) ) ) | |
| (Chicago Title Insurance Company and Walter Adams, Third-Party Defendant-Appellants). | ) ) ) | Honorable Sonja L. Ligon, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Welch and McHaney concurred in the judgment and opinion.

**OPINION**

¶ 1    The third-party plaintiffs, Marcia P. Adams, both individually and as successor trustee of the Almyra M. Prather Revocable Trust Agreement dated December 15, 1967, and Lawrence P. Luby, executor of the estate of Betty P. Luby, deceased,[1] (collectively, the Prather Trust) brought

_____

[1]Marcia Adams and Betty Luby were successor trustees and the only income beneficiaries of a trust created by their mother, Almyra M. Prather, and referred to as the Prather Trust. During the pendency of the litigation, Betty Luby passed away, and Lawrence Luby was named as the executor of her estate.

1

a third-party action against Chicago Title Insurance Company and Walter Adams[2] (collectively, Chicago Title), alleging that the third-party defendants conspired to slander title to the Prather Trust's 50% interest in a mineral estate[3] and to convert the Prather Trust's share of the proceeds from the sale of minerals extracted from the mineral estate. Chicago Title moved for summary judgment, arguing that the Prather Trust's claims failed as a matter of law because the removal and sale of minerals by a tenant in common, without the consent of its cotenant, did not constitute a tort under Illinois law. The trial court denied the motion for summary judgment. Thereafter, the trial court certified three questions of law involving the interests and obligations of cotenants, and Chicago Title filed an application for leave to appeal under Illinois Supreme Court Rule 308(a) (eff. Oct. 1, 2019). This court initially denied Chicago Title's application, but pursuant to a supervisory order from the Illinois Supreme Court (*Adams v. Chicago Title Insurance Co.*, No. 128586 (Ill. Sept. 28, 2022) (supervisory order)), we vacated that order and allowed the interlocutory appeal.

¶ 2    This case began in March 2016, when the plaintiff, Patrick J. O'Malley Jr., as trustee under a trust agreement dated January 1, 2006 (O'Malley Trust), filed an action for adverse possession. The O'Malley Trust and the Prather Trust each held a 50% interest in the mineral estate in farmland located in Crawford County. In the complaint, the O'Malley Trust alleged that it had acquired the Prather Trust's 50% interest in the mineral estate by adverse possession. The Prather Trust filed an answer and affirmative defenses and successfully defended its interests, eventually obtaining a summary judgment in its favor on the O'Malley Trust's claim for adverse possession.

---

[2]Walter Adams was an associate regional counsel for Chicago Title Insurance Company at the time of these events.

[3]The term "mineral estate" is a generic term used herein to describe the oil, gas, and other minerals available for extraction from the land.

¶ 3    In the same case, the Prather Trust filed a counterclaim for an accounting against the O'Malley Trust and third-party claims against several defendants, including Chicago Title. The Prather Trust alleged that since 2008, its cotenant, the O'Malley Trust, had contracted with a third party to remove and sell the oil and natural gas from the mineral estate, without the knowledge or consent of the Prather Trust. The Prather Trust further alleged that the Chicago Title defendants conspired to slander title to the Prather Trust's interests in the mineral estate and to convert its share of the natural gas proceeds from the mineral estate by issuing a title policy that falsely declared that the O'Malley Trust had merchantable title to 100% of the minerals in the mineral estate.

¶ 4    Chicago Title moved for summary judgment, arguing that the Prather Trust's claims failed as a matter of law because the removal and sale of minerals by a tenant, without the permission of its cotenant, was not a tort under Illinois law. The trial court denied Chicago Title's motion for summary judgment. In a detailed order, the trial court examined the applicable statutes and the case law and provided the basis for its decision. Subsequently, the trial court certified three questions for interlocutory review under Rule 308(a). All of the certified questions were derived from the issues discussed in the summary judgment order regarding the interests and obligations of cotenants to a mineral estate.

¶ 5    Rule 308(a) authorizes the appellate court, in its discretion, to permit an appeal of an interlocutory order when the trial court has made a written finding that "the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019). Generally, appellate review under Rule 308 is limited to the specific questions of law identified by the trial court. *Rozsavolgyi v. City of Aurora*,

3

2017 IL 121048, ¶ 21. A reviewing court will decline to answer a certified question where the answer is dependent upon the underlying facts of a case or where the question calls for an answer that is advisory or provisional. *Rozsavolgyi*, 2017 IL 121048, ¶ 21. Rule 308 was not intended to provide a mechanism for expedited review of an order that merely applies the law to the facts of a particular case, and it does not generally permit the reviewing court to analyze the propriety of the underlying order entered by the trial court. *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 17. A question certified under Rule 308 presents a question of law that is reviewed *de novo*. *Moore v. Chicago Park District*, 2012 IL 112788, ¶ 9.

¶ 6    In this case, the trial court certified the following three questions for permissive interlocutory review under Rule 308:

"1. Whether, in light of Illinois Supreme Court cases such as *Reward Oil Co. v. White*, 333 Ill. App. 241 (1948)[,] and *Pure Oil Co. v. Byrnes*, 388 Ill. 26 (1944), Illinois law provides a tenant in common owning at least half of the mineral interest in land with an unfettered right to drill for oil and gas without cotenant permission?

2. Whether 765 ILCS 520/2, which provides that the owners of at least half of a mineral interest 'desiring to drill for and remove oil and gas *may* file a complaint … asking the court for permission to drill…':

a. imposes a mandatory requirement that a cotenant *must* always seek court permission prior to drilling for oil and gas; and,

b. necessarily subjects a drilling party to tort claims if they do not follow the statutory procedure?

3. Does the Supreme Court of Illinois' holding in *Pure Oil Co. v.*

4

*Byrnes*, 388 Ill. 26 (1944), which provides '[t]he stern rule of liability of a cotenant, who commits waste or damage to the common property, has been relaxed where the profit taken from the land is of a fugacious nature and liable to be exhausted by adjacent operators':

> a. preclude a nondrilling cotenant from bringing a conversion claim against a drilling cotenant when the latter removes oil and gas from property without the former's permission; and
>
> b. preclude a nondrilling cotenant from bringing a slander of title claim against their cotenant following the cotenant's decision to grant a lease to a third party to drill for oil and gas on the property?"
>
> (Emphasis in original.)

¶ 7    All three certified questions concern the rights and obligations of tenants in common. Chicago Title asserts that a tenant in common who owns at least one-half of the mineral interest in land has "an unfettered right" to drill for, remove, and sell the minerals from the mineral estate, without the permission of the other cotenants, and that the nondrilling cotenants' only remedy is an accounting. Chicago Title further asserts that the Oil and Gas Rights Act (765 ILCS 520/0.01 *et seq.* (West 2020)) does not require an owner of at least one-half of the mineral interests in land, who does not have consent of its cotenants, to follow the procedures outlined in the Oil and Gas Rights Act as a precondition to drilling for oil and gas and that the failure to follow the statutory procedure does not constitute a tort. In response, the Prather Trust argues that, under Illinois law, one cotenant cannot remove and sell minerals from a mineral estate without either (a) the permission of the other cotenants or (b) a court order obtained after complying with the statutory procedures in the Oil and Gas Rights Act. It further argues that when a cotenant extracts and sells

5

minerals from a mineral estate, without first obtaining either the permission of the cotenants or a valid court order, the cotenant is liable for trespass to the nonconsenting tenants' interests and for conversion of their respective shares of the proceeds.[4]

¶ 8       In Illinois, it has been long held that each tenant in common has the same right as all other tenants in common to use and enjoy the property. *Fyffe v. Fyffe*, 292 Ill. App. 539, 548 (1937). A tenant in common may not prejudice the rights of his cotenants by a conveyance of any specific part or of any interest, right, or license in any specific part of the common property. *Zeigler v. Brenneman*, 237 Ill. 15, 23 (1908); *Murray v. Haverty*, 70 Ill. 318, 320 (1873). Thus, a tenant in common could not lawfully commit waste on or destroy the common property or do any act that would work a permanent injury to the inheritance, and therefore, he could not grant that right to a stranger. *Murray*, 70 Ill. at 320; *Fyffe*, 292 Ill. App. at 549.[5] At the time the *Murray* case was decided, an Illinois statute[6] authorized a tenant to maintain an action for "trespass or trover" against a cotenant who took, destroyed, lessened in value, or otherwise injured the common property. See *Murray*, 70 Ill. at 320. The statutory provision was amended in 1935. See 1935 Ill. Laws 936 (§ 1) (amending 1919 Ill. Laws 633 (§ 4)). The current version of the statute is found in section 4 of the Joint Tenancy Act and provides:

> "If any person shall assume and exercise exclusive ownership over, or take away, destroy, lessen in value, or otherwise injure or abuse any property held in joint tenancy or tenancy

---

[4]Pursuant to leave of this court, the Illinois Oil & Gas Association filed an *amicus curiae* brief in opposition to the brief of Chicago Title and incorporated the arguments made by the Prather Trust.

[5]In *Fyffe*, 292 Ill. App. at 549, the court found that, although there was a conflict among some authorities about the right of a tenant in common to grant a third party the right to take oil and gas from a common property, "no such right rests in a tenant in common in this state." The court did not consider other common-law actions, as the issue before the court was in reference to the accounting portion of the litigation.

[6]The statute was initially enacted in 1821 and subsequently amended. It is a predecessor to what is now called the Joint Tenancy Act (765 ILCS 1005/0.01 (West 2020)). See generally *Svenson v. Hanson*, 289 Ill. 242, 246 (1919).

6

in common, the party aggrieved shall have his civil action for the injury in the same manner as he would have if such joint tenancy or tenancy in common did not exist." 765 ILCS 1005/4 (West 2020) (formerly Ill. Rev. Stat. 1991, ch. 76, ¶ 4).

The 1935 amendments also added a provision for the accounting of profits or benefits. 1935 Ill. Laws 936 (§ 1). The current version of the provision is found in section 4a of the Joint Tenancy Act and provides:

"When one or more joint tenants, tenants in common or co-partners in real estate, or any interest therein, shall take and use the profits or benefits thereof, in greater proportion than his or their interest, such person or persons, his or their executors and administrators, shall account therefor to his or their cotenants jointly or severally." 765 ILCS 1005/4a (West 2020) (formerly Ill. Rev. Stat. 1991, ch. 76, ¶ 5).

¶ 9    In 1939, the Illinois legislature passed the Oil and Gas Rights Act of 1939 (Act) (1939 Ill. Laws 805 (§ 1)). The Act provided an orderly statutory process by which the owners of a majority interest in land could petition the circuit court for an order permitting them to drill for and produce oil or gas for the use and benefit of all cotenants where the interests of their cotenants was in imminent danger of being drained of its oil or gas by wells on an adjoining premises. *Pure Oil Co. v. Byrnes*, 388 Ill. 26, 29 (1944). In such cases, the owners of a majority interest were required to account to the cotenants for their respective proportions of the net value of the oil produced, "which is its market value, less the cost of extracting and marketing it." See *Pure Oil*, 388 Ill. at 39.

¶ 10    Under the current version of the Act, the circuit court may authorize the majority holders of joint interests in land to drill and extract oil to protect the land "in the manner hereinafter provided." 765 ILCS 520/1 (West 2020). Section 2 of the Act provides:

7

"§ 2. The owners of such interest desiring to drill for and remove oil and gas may file a complaint in the Circuit Court of the county in which such lands, or some part thereof, are located, asking the court for permission to drill for and remove oil and gas therefrom for the use and benefit of all the owners of the right to drill for and remove oil and gas from such lands, and setting forth the relevant facts and the interests of all persons owning the right to drill for and remove oil and gas under such lands, so far as the same are known to the plaintiffs." 765 ILCS 520/2 (West 2020).

¶ 11    The Act further requires the plaintiff to name all other cotenants, including unknown owners, as defendants and to summon or notify all defendants in the same manner as known or unknown defendants may be summoned or notified in other civil cases. 765 ILCS 520/3, 4 (West 2020). The circuit court is authorized to investigate and determine all questions regarding conflicting titles, remove clouds from titles, and confirm the title to the right to drill for and remove oil and gas from the lands. 765 ILCS 520/6 (West 2020). If the circuit court finds that the material averments in the complaint are true and that the plaintiffs own a one-half interest or more in the right to drill for and remove the oil and gas from the land as joint tenants, tenants in common, or coparceners, the circuit court shall enter an order authorizing the plaintiffs "to drill for and remove oil and gas from such lands so as to realize the full value thereof for the benefit of the parties entitled thereto." 765 ILCS 520/7 (West 2020). The circuit court shall also order the plaintiffs to provide for payment to nonconsenting cotenants their respective shares of the oil or gas produced, after deductions for their proportionate share of the costs of drilling for, producing, and disposing of the oil or gas. 765 ILCS 520/7 (West 2020). Section 9 of the Act provides that the Civil Practice Law and the Illinois Supreme Court rules apply to suits filed under the Act. 765 ILCS 520/9 (West 2020). Thus, the Act sets forth an orderly process through which a cotenant who does not have the

8

consent of the other cotenants may obtain the permission of the circuit court to remove minerals from the mineral estate, while also protecting due process rights and property interests of nonconsenting cotenants.

¶ 12　The above-referenced legal principles regarding the Act and the obligations of cotenants were discussed in *Pure Oil*, 388 Ill. at 39, and *Reward Oil Co. v. White*, 333 Ill. App. 241, 245 (1948). Notably, in each of those cases, the majority owners of joint interests in the land, or their lessees, followed the statutory procedures in the 1939 version of the Act. In each case, the majority owners or their lessees filed a complaint, seeking a court decree authorizing drilling on the property, with summons and notice to the cotenants. *Pure Oil*, 388 Ill. at 29; *Reward Oil*, 333 Ill. App. at 242.

¶ 13　In *Pure Oil*, our supreme court noted that, prior to the enactment of the oil and gas rights statute in 1939, one cotenant could not remove oil and gas from a common property without the permission of its cotenants and that any cotenant who commenced drilling and production without the consent of the nondrilling cotenants became liable to account for damage to the inheritance and was not entitled to deduct the expenses incurred in taking profit from the land. *Pure Oil*, 388 Ill. at 39. The supreme court further noted that this "stern rule of liability" to account for damages had been relaxed where the profit taken from the land was of a fugacious nature and where the oil and gas were being drained, or in imminent danger of being drained away, through wells on adjacent land. *Pure Oil*, 388 Ill. at 39. In those cases, the applicable rule allowed a deduction for the money spent in protecting, preserving, and marketing the oil and gas and required the cotenant who took the oil or gas to account to his cotenants for their respective proportions of the market value, less the costs of removal and marketing. *Pure Oil*, 388 Ill. at 39. The supreme court then found the same relaxed rule of accounting was provided in the oil and gas statute of 1939. Thus,

9

where the trial court, acting pursuant to the statute of 1939, entered a decree authorizing the owner of a majority of the joint interest to drill, produce, and market oil from common property to protect it from being drained by adjacent wells, the statutory accounting rule required that owner to account to his cotenants for their respective proportions of the market value of the oil produced, less the costs of extracting and marketing it. *Pure Oil*, 388 Ill. at 39. The same rules were applied in *Reward Oil*, 333 Ill. App. at 245-46.

¶ 14 Contrary to the contention of Chicago Title, the courts in *Pure Oil* and *Reward Oil* did not hold that a tenant in common owning at least one-half of the mineral interest in land had "an unfettered right" to drill for oil and gas without the permission of cotenants. Accordingly, the answer to the first certified question is no.

¶ 15 Under Illinois law, a tenant in common does not have a legal right to take oil and gas from a common property without the permission of the cotenants, and the nondrilling cotenants may file a civil action and seek damages to redress the injuries to their respective interests. See 765 ILCS 1005/4 (West 2020); *Pure Oil*, 388 Ill. at 39. In a case where a cotenant with a one-half interest or more wants to drill for and remove oil from the mineral estate and where he does not have the consent of the cotenants, he may seek relief under the Act. 765 ILCS 520/1 (West 2020). In order to obtain a court order granting permission to drill and remove the oil or gas, the cotenant-plaintiff must follow the proper statutory procedures, including filing a complaint, providing summons and/or notice to his cotenants, and proving that the material averments in his complaint are true; he must also account to the nonconsenting cotenants as provided in the Act. 765 ILCS 520/7 (West 2020).

¶ 16 Accordingly, the answers to the second and third certified questions are similar to the first. The owner of a one-half interest or more in a mineral estate does not have an unfettered right to

10

remove and market the minerals from the mineral estate. The owner of a one-half interest or more in a mineral estate may, with the permission of the cotenants, remove and market the minerals from the mineral estate. The owner must then account to the cotenants for their respective shares of the market value of the oil or gas produced, less the costs of extracting and marketing it. When the owner of a one-half interest or more in a mineral estate does not have the permission of the cotenants, he may seek an order from the circuit court to obtain permission to remove and market the oil and gas from the mineral estate in compliance with the Act. In that case, the court shall provide by order for the payment and distribution of the net proceeds from the disposition of the oil and gas, after deduction of the proportionate costs of extracting and marketing of the oil and gas. When the owner of a one-half interest or more in a mineral estate removes and markets the minerals from the mineral estate, without either the permission of his cotenants or an order of the circuit court obtained in compliance with the Act, the owner is subject to an action in tort for any injuries to the respective interests of the cotenants, and the owner may invoke appropriate defenses.

¶ 17    Having answered the certified questions, we remand this case to the circuit court for further proceedings.

¶ 18    Certified questions answered; cause remanded.

*O'Malley v. Adams*, 2023 IL App (5th) 220206

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Crawford County, No. 16-CH-9; the Hon. Sonja L. Ligon, Judge, presiding. |
| **Attorneys for Appellant:** | Michael T. Reagan, of Ottawa, and Gerard T. Carmody (*pro hac vice*), Kevin M. Cushing, and Ryan M. Prsha, of Carmody MacDonald P.C., of St. Louis, Missouri, for appellants. |
| **Attorneys for Appellee:** | A. Courtney Cox, of Sandberg Phoenix & von Gontard, P.C., of Carbondale, and David M. Foreman, of Foreman & Kessler, Ltd., of Salem, for appellees. |
| *Amicus Curiae*: | J. Nelson Wood, of Illinois Oil & Gas Association, of Mt. Vernon, *amicus curiae*. |